LEEDOM and others, Respondents, vs. THE H. B. CLAFLIN COMPANY, Garnishee, Appellant.

*September 9 — September 26, 1899.*

*Debtor and creditor: Chattel mortgage: Voluntary assignment.*

Insolvent debtors gave a chattel mortgage covering substantially all their property to their largest creditor for himself and as agent and trustee for four other creditors. The mortgagee took imme-

diate possession and proceeded to sell the property and distribute the net proceeds *pro rata* among the creditors so preferred, all of whom knew that the debtors were insolvent at the time the mortgage was given. *Held*, that the transaction amounted to an assignment for the benefit of creditors, in violation of the statute (sec. 1694, Stats. 1898), and that the mortgage was fraudulent and void as to the other creditors.

APPEAL from a judgment of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Affirmed.*

The plaintiffs brought this action against the defendants, as copartners under the firm name of the White House Dry Goods Company, to recover the amount of a promissory note. The *H. B. Claflin Company* was summoned as garnishee, and made answer denying liability. The action was tried by the court without a jury, findings were made in favor of the plaintiffs, and judgment entered against the garnishee, from which judgment the garnishee takes this appeal.

For the appellant there was a brief by *Bleekman, Bloomingdale & Bergh*, and oral argument by *A. E. Bleekman.*

For the respondents there was a brief by *Fruit & Gordon*, and oral argument by *G. H. Gordon.*

BARDEEN, J. The objections to this judgment are based entirely upon the court's findings. It is earnestly insisted that the findings are opposed to, and are not supported by, the evidence. The facts, briefly stated, are as follows:

The defendants were conducting a large dry goods store at La Crosse. They were indebted to some ninety different creditors in the sum of over $29,000, about $16,000 of which they owed to the garnishee. Quite a large portion of their indebtedness was due, and they were being pressed for payment. On January 16, 1897, garnishee's agent, George M. Shelley, came to La Crosse and demanded a settlement or security. The defendants objected, but after some persua-

sion a chattel mortgage was given, which the court finds covered all of their property except some book accounts and a piece of real estate held under contract, which were of little or no value. The mortgage was for $19,169.01, which covered the garnishee's claim of $15,797.60, and the claims of four other creditors, amounting to $2,183.98. The difference of $1,187.43 is claimed to have been for money advanced to defendants to pay help and certain small debts owed around town. The garnishee's agent took immediate possession of the stock, sold at retail for about sixty days, and then made a sale of the remainder in bulk to one O'Brien, who in turn sold to Gregory in September following. The garnishee claims to have realized only $17,527.11 from a stock alleged to have inventoried some $48,000.

The court found that the mortgage was given to the garnishee for itself, and as agent and trustee for the four other creditors named; that the mortgage covered substantially all of defendants' property; that, after deducting the expense of sale, the garnishee distributed the balance of the proceeds among the five creditors preferred, except the sum of $489.40, which sum had not yet been distributed; that each creditor received forty-eight per cent. of its claim, in two dividends of twenty-five and twenty-three per cent.; that at the time the mortgage was given the defendants were insolvent, which fact was known to the parties interested; and that the mortgage was fraudulent and void as to creditors.

As might be expected, the garnishee attacks these findings with great vigor. The point especially urged with vehemence is that the court had no warrant to find that the garnishee took possession of the goods as agent and trustee for the other creditors. To get over the court's conclusion, the garnishee claims that it purchased the claims of these several creditors outright before the mortgage was given. There is considerable evidence to support this conclusion,

coming principally from J. C. Lance, who was the husband
of the defendant M. J. Lance, and her agent in charge, and
Shelley, who was the garnishee's representative at the time
the mortgage was taken. Shelley says that all of these
creditors except one were paid in cash by him at the time of
the purchase; that, as to the other creditor, he agreed to
pay the claim on behalf of the garnishee; and that he had
assignments of the accounts. In this he is contradicted by
several of the creditors. But the most complete impeach-
ment of this claim is furnished by the garnishee's letters
and account. In letter of April 7, 1897, to the Mons Ander-
son Company, one of the preferred creditors, the garnishee
writes: "We have received from the sales of the White
House Dry Goods Co. of La Crosse, Wis., $4,100. This will
not quite pay twenty-five per cent., including our claim; but
we feel you are entitled to your division, and we therefore
inclose herewith our check for $68.85." In another letter,
of March 15, 1898, they send the same company a check for
$63.34, being a *pro rata* dividend of twenty-three per cent.
on their claim, with a statement showing receipts and dis-
bursements under the mortgage. This statement is quite in-
structive on this branch of the case. It shows receipts from
sales up to the sale to Gregory in September, and while the
stock was said to have been in the hands of a stranger, and
*pro rata* payments upon all of the claims of the preferred
creditors, except one, which they paid after an attachment
had been levied. These facts, together with others which
might be mentioned, completely impeach the alleged claim
of purchase of these accounts.

A careful review of the evidence has served to convince
us that the other exceptions to the findings stand on quite as
precarious a foundation. We need only to invoke the often
reiterated and salutary rule that this court will not disturb
the findings of the trial court unless we can see a preponder-
ance of evidence against them. This rule has been stated

so many times that authorities need not be cited for its support. In this case we are well satisfied that the findings are supported by the evidence, and that the conclusions of the trial court were manifestly right. The taking of this mortgage and the treatment of the mortgaged property operated as a fraud upon the plaintiff's rights, and the court was justified in holding that the circumstances brought the case within the line of decisions noted in *Strong v. Kalk*, 91 Wis. 29.

*By the Court.* — The judgment of the circuit court is affirmed.